**MERIDIAN INSURANCE COMPANY,**
**Appellant–Plaintiff,**

v.

**Simon ZEPEDA and Ernest L. King,**
**Appellee–Defendants.**

No. 45A05–9905–CV–235

Court of Appeals of Indiana.

Sept. 19, 2000.

Jerry E. Huelat, Huelat & Gardner, Michigan City, Indiana, Attorney for Appellant.

Thomas A. Clements, Ruman, Clements, Tobin & Holub, P.C., Hammond, Indiana, Attorney for Appellee.

## OPINION

### VAIDIK, Judge

Meridian Insurance brought a declaratory judgment action claiming it had no duty to indemnify its insured, Simon Zepeda, in a personal injury suit brought by shooting victim, Ernest King, after a criminal jury found Zepeda guilty of aggravated battery. Zepeda's insurance policy through Meridian excluded coverage for "expected and intended acts." Meridian alleges that both Zepeda and King were collaterally estopped from litigating the issue of Zepeda's intent after the criminal jury necessarily found his acts to be intentional when finding him guilty of aggravated battery. Because we find that Zepeda's criminal conviction collaterally estopped him from relitigating the issue of his intent, we reverse. However, we remand to the trial court to allow King to litigate the issue of Zepeda's intent. Because King never had a full and fair opportunity to litigate this issue in Zepeda's criminal trial, collateral estoppel does not preclude him from doing so now. Finally, in the retrial of this case, neither King nor Zepeda should be judicially estopped from alleging that the shooting was accidental.

### Facts and Procedural History

Zepeda shot King with a .22 caliber rifle causing King to become paralyzed from the neck down. Subsequently, Zepeda was charged and convicted of aggravated battery for shooting King. A week before the criminal trial ended, King filed a personal injury action against Zepeda, claiming that Zepeda negligently discharged the rifle, causing his injuries.

Zepeda's insurer, Meridian, assumed Zepeda's defense in the personal injury action with a reservation of rights and filed a complaint for declaratory judgment against Zepeda and King. In its complaint, Meridian alleged that because Zepeda had been found guilty of aggravated battery and his insurance policy excluded coverage if the injuries were "expected or intended" by the insured, it was not required to provide coverage for Zepeda's acts.

When Zepeda failed to appear in the declaratory judgment proceeding, Meridian obtained a default judgment against Zepeda. In the default judgment order, the court found that Zepeda's intentional acts caused King's injuries. Thereafter, Meridian filed a motion for summary judgment in which it argued that because the default judgment determined that Zepeda

had acted intentionally in shooting King, both Zepeda and King were collaterally estopped from claiming that Zepeda's acts were negligent. Later, the default judgment was set aside and Meridian's summary judgment motion was denied.

Subsequently, Meridian requested permission to file a second summary judgment motion on whether Zepeda's criminal conviction barred Zepeda and King from relitigating the issue of Zepeda's intent. Meridian alleged that because its first summary judgment motion relied solely on the preclusive effects of the default judgment, it should be able to argue the preclusive effect of the criminal conviction in the second motion. The court denied the motion.

Ultimately, the personal injury action and the declaratory judgment action were consolidated, and the parties agreed that the declaratory judgment action would be tried first. The parties further stipulated that if the jury found coverage, Meridian would be required to pay King its policy limit of $300,000.

During the jury trial, Zepeda's conviction for aggravated battery was admitted into evidence, and both Zepeda and King testified about the shooting. At the conclusion of the evidence, Meridian moved for judgment on the evidence, contending that Zepeda and King were collaterally estopped from litigating Zepeda's intent because the issue of intent had been decided in Zepeda's criminal trial. Further, Meridian claimed that Zepeda and King were judicially estopped from claiming the shooting was accidental. The court denied Meridian's motion and the jury found that Zepeda's acts were negligent thereby requiring Meridian to provide coverage to King.

**Discussion and Decision**

Meridian claims that both Zepeda and King are collaterally estopped from litigating Zepeda's intent because the criminal jury necessarily found the shooting to be intentional when it found Zepeda guilty of aggravated battery. As a result, Meridian argues that the court should have heard

and granted its second summary judgment motion. Additionally, Meridian argues that both Zepeda and King are judicially estopped from claiming the shooting was an accident because Zepeda contended the shooting was in self-defense and King testified the shooting was intentional during the criminal jury trial. We find the issue of collateral estoppel to be dispositive.

*I. Collateral Estoppel*

Collateral estoppel bars litigation of issues and facts which were necessarily adjudicated in a prior action. *Tofany v. NBS Imaging Sys., Inc.,* 616 N.E.2d 1034, 1037 (Ind.1993). The offensive use of collateral estoppel occurs when a plaintiff seeks to prevent a defendant from relitigating an issue which was unsuccessfully litigated by the defendant in a prior action. *Id.*

Collateral estoppel promotes judicial economy and protects the litigants from the burden of relitigating an identical issue with the same party or his privity. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In determining whether to allow the use of collateral estoppel, the trial court must engage in a two-part analysis: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue and (2) whether it is otherwise unfair to apply collateral estoppel given the facts of the particular case. *Tofany,* 616 N.E.2d at 1038. The factors to be considered by the trial court in deciding whether to apply collateral estoppel are not exhaustive but provide a framework for the trial court. These factors include privity, the defendant's incentive to litigate the prior action, and the ability of the plaintiff to have joined the prior action. *Id.* A trial court is afforded great deference to disallow the offensive use of collateral estoppel because it is the trial court that will devote the time to try the case. *Id.* at 1039.

Our Supreme Court has approved using offensive collateral estoppel to allow a plaintiff to establish civil liability against a

criminal defendant for the same act which resulted in a criminal conviction. *Doe v. Tobias,* 715 N.E.2d 829 (Ind.1999). In *Tobias,* the court concluded that as a general rule, a convicted criminal defendant should be collaterally estopped from relitigating his actions in a subsequent civil action. *Id.* at 831. Our Supreme Court appears divided, however, on the issue of whether collateral estoppel may be used against the victim of a crime in a civil action after the defendant is convicted of a crime for the same act. *See Hawkins v. Auto–Owners (Mutual) Ins. Co.,* 608 N.E.2d 1358 (Ind. 1993); *Kimberlin v. DeLong,* 637 N.E.2d 121 (Ind.1994), *reh'g denied, cert. denied,* 516 U.S. 829, 116 S.Ct. 98, 133 L.Ed.2d 53 (1995).

### A. The Use of Offensive Collateral Estoppel against Zepeda

■ Collateral estoppel precludes the relitigation of issues that were necessarily adjudicated in a prior case. Thus, we must first determine whether the issues in the civil case were the same as those in the criminal case. Zepeda was convicted of aggravated battery, which is established by evidence that a person knowingly or intentionally inflicted injury on another and the injury caused serious permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ. IND.CODE 35–42–2–1.5 (West 1998 & Supp.2000). A person commits an offense intentionally if it is his conscious objective to do so, and knowingly if "when he engages in the conduct, he is aware of a high probability that he is doing so." IND. CODE 35–41–2–2(a), (b) (West 1998). At issue in the civil action was whether King's bodily injury was "expected or intended" by the insured, Zepeda. An injury is intended if the insured actually intends the injury or the nature and character of the act is such that intent to cause injury can be inferred as a matter of law. *Sans v. Monticello Ins. Co.,* 676 N.E.2d 1099, 1102 (Ind.Ct.App.1997), *trans. denied.* An injury is expected if the insured was consciously aware that the injury was practically certain to occur. *Bolin v. State Farm*

*Fire and Cas. Co.,* 557 N.E.2d 1084, 1086 (Ind.Ct.App.1990), *trans. denied.*

Considering the result reached in the criminal trial, the jury must have determined that Zepeda either intended to shoot King or was aware of a high probability that he was doing so. As a result, the issue of whether Zepeda's acts were expected or intended was necessarily litigated in the criminal trial. Since the same issue was already litigated, Meridian may be allowed to use offensive collateral estoppel against Zepeda if: (1) he had a full and fair opportunity to litigate the issue of his intent in the criminal proceeding and (2) it is not otherwise unfair to apply collateral estoppel.

■ We find that Zepeda had a full and fair opportunity to litigate the intent issue in his criminal trial and it is not unfair to apply collateral estoppel against him. Zepeda had the opportunity to defend against the criminal action and had every incentive to vigorously defend against the charges. Further, because Meridian had no opportunity to intervene in the criminal trial, there is no concern that it waited for a favorable judgment to assert collateral estoppel against Zepeda. Given these circumstances, the trial court abused its discretion when it failed to estop Zepeda from relitigating whether he expected or intended King's injuries. *Doe v. Tobias,* 715 N.E.2d 829 (Ind.1999).

### B. The Use of Offensive Collateral Estoppel against King

In its complaint for declaratory judgment, Meridian named both Zepeda and King as defendants. Therefore, we must determine whether Meridian may use collateral estoppel against King as well.

We find some guidance from prior Indiana decisions. In *Hawkins v. Auto–Owners (Mutual) Ins. Co.,* 608 N.E.2d 1358 (Ind.1993), *receded from in Kimberlin v. DeLong,* 637 N.E.2d 121 (Ind.1994), our Supreme Court concluded that a criminal conviction may be admitted in evidence

in a civil action and may be conclusive proof in a civil trial of the factual issues determined by the criminal judgment. In *Hawkins*, an insured shot another and was convicted of attempted murder. Thereafter, the victim's guardian, Hawkins, filed a civil suit against the shooter for negligence. The shooter's insurer, Auto–Owners, sought a declaratory judgment that it was not required to provide coverage for the victim's injuries because the insurance policy excluded coverage for injuries which were expected or intended. The majority held that because the criminal action determined that the shooter's actions were deliberate, the shooter's insurer was not responsible under the terms of the policy. However, Justice Dickson dissented:

> In the final judgment in the criminal proceeding, [the shooter] was convicted of attempted murder upon charges that he "knowingly fired a handgun at [the victim] ... with the intent to kill [the victim]." ... Such judgment constituted evidence relevant to the issue central to the declaratory judgment action: whether [the shooter's] conduct fell within the Auto–Owners policy exclusion for bodily injury "expected or intended by an insured person."

> The only rationale remotely justifying use of the criminal conviction to conclusively resolve the insurance exclusion interpretation without proper summary judgment or full trial is the doctrine of collateral estoppel.

\* \* \*

> Auto–Owners as plaintiff in the declaratory judgment action is attempting to offensively use [the shooter's] criminal conviction to estop defendant Hawkins from presenting evidence, yet is seeking to bind Hawkins by the resulting judgment. Hawkins was not and could not have joined as a party to the criminal case and thus had no opportunity to participate in the former proceeding.

\* \* \*

> I would conclude that Hawkins [as the shooter's guardian], having been named as a defendant [in the declaratory judgment action] and thereby invited to participate in Auto–Owner's declaratory judgment action, was clearly entitled to present evidence upon the coverage issue without being collaterally estopped by [the shooter's] criminal conviction.

*Id.* at 1361.

After the *Hawkins* decision, Justice Dickson, writing the majority opinion in *Kimberlin v. DeLong*, 637 N.E.2d 121 (Ind.1994), receded from the *Hawkins* ruling. In *Kimberlin*, Justice Dickson concluded:

> we today retreat from our implied holdings in *Hawkins* regarding the conclusiveness of the judgment and the admissibility of the criminal trial transcript. Thus, while a criminal felony judgment may be admitted in evidence, such conviction is not necessarily conclusive proof in the civil trial of the factual issues determined by the criminal judgment, and the evidence transcript is not necessarily admissible.

*Kimberlin* at 124. The *Kimberlin* court then determined that although the criminal conviction is not necessarily conclusive on the civil issues, it may provide a basis for the offensive use of collateral estoppel. *Id.* at 125. Thereafter, the court allowed a victim to use offensive collateral estoppel in a civil action against a defendant who had been convicted of a crime arising out of the same act.

■ Following the reasoning of *Kimberlin*, Zepeda's criminal judgment is not necessarily conclusive proof of the issue of intent in the civil declaratory judgment action. However, the conviction may provide a basis for the use of collateral estoppel and therefore, we must analyze whether collateral estoppel may be used against King.

■ King never had a full and fair opportunity to litigate the issue of Zepe-

da's intent. King was a victim of Zepeda's act and as a result, participated in the criminal trial by testifying on the State's behalf. Presumably, most victims hope to see the State succeed in proving its case. However, victims do not participate as litigants who may control the direction of the trial. Rather, they function only as witnesses who recall and testify to the events that occurred. King did not have the benefit of legal counsel at Zepeda's criminal trial. Therefore, no one present at the criminal trial was protecting King's rights and interests specifically. Under these circumstances, we conclude it would be unfair to allow the use of offensive collateral estoppel against King, thus precluding him from litigating the issue of Zepeda's intent.

We recognize that our holding allows for potentially inconsistent determinations of fact in criminal trials and declaratory judgment actions. See *Kimberlin*, 637 N.E.2d at 131 (Shepard, C.J., concurring in result with separate opinion and noting that in a second trial on insurance coverage, a jury would be entitled to find that a perpetrator did not intend to harm his victim, contrary to a criminal jury's finding). Nonetheless, we find that affording a litigant the opportunity to have her day in court to fully litigate her position overrides the potential for inconsistent determinations. Additionally, we find that if we ruled otherwise, we might be sending a message to victims of crime not to cooperate with criminal prosecutions, lest the criminal conviction may be used against them in a subsequent civil action. For these reasons, we find the trial court did not abuse its discretion when it did not estop King from litigating the intent issue in the civil trial.

## II. The Second Summary Judgment Motion

Meridian claims that the trial court erroneously denied its request to file a second motion for summary judgment. When Meridian's first motion was filed, the default judgment had not been set aside. As a result, Meridian based its collateral estoppel argument on the fact

that the default judgment established that King's injuries were the result of an intentional act. According to Meridian, after the default judgment was set aside, it should have been permitted to submit a second motion to argue that the criminal conviction, not the default judgment, barred litigation on the issue of Zepeda's intent. We agree.

Ind. Trial Rule 56 does not specifically preclude the filing of successive motions for summary judgment. But, once an issue has been decided in a motion for summary judgment, the parties may not file successive motions. *Rotec, Div. of Orbitron, Inc. v. Murray Equip., Inc.*, 626 N.E.2d 537 (Ind.Ct.App.1993).

Here, the second summary judgment motion did not involve the same issue as the first motion. The first motion dealt with the issue of the possible preclusive effect of the default judgment while the second motion dealt with the possible preclusive effect of the criminal conviction. We find the trial court erred when it denied Meridian the opportunity to file a second summary judgment motion.

### Conclusion

The trial court erred when it failed to grant Meridian's second summary judgment motion against Zepeda and allowed Zepeda to relitigate the issue of his intent in the declaratory judgment action. We conclude the error was not harmless. During the jury trial, Zepeda was able to examine and cross-examine witnesses, and argue his case to the jury. We cannot say this did not affect the jury's verdict. Accordingly, we reverse and remand to the trial court for a new trial. At the new trial, King may litigate the issue of Zepeda's intent.

Meridian also argues in its appeal that Zepeda and King should be judicially estopped from claiming that Zepeda's acts were negligent. Although we do not find this issue determinative, we believe direction to the trial court is appropriate. On retrial, neither Zepeda nor

King should be barred from testifying that Zepeda accidentally shot King.

Judicial estoppel "prevents a party from asserting a position in a legal proceeding inconsistent with one previously asserted." *Wabash Grain, Inc. v. Smith,* 700 N.E.2d 234, 237 (Ind.Ct.App. 1998). Litigants are prohibited from taking advantage of the judicial process by prevailing twice under different theories. *GEICO Ins. Co. v. Rowell,* 705 N.E.2d 476, 481 (Ind.Ct.App.1999), *reh'g denied.* Judicial estoppel prevents a party who has successfully maintained a position in the first proceeding from subsequently asserting an inconsistent position. The key to the doctrine is that it prohibits a party from presenting a position contrary to one upon which he previously prevailed. *See* 31 C.J.S. *Estoppel and Waiver § 139(b)(1996)*:

Zepeda will not be a party during the retrial and thus, judicial estoppel does not apply to him. Furthermore, because Zepeda was convicted of the battery, he did not prevail under any inconsistent positions. Likewise, King did not prevail on any position during the criminal trial—the State did. Also, King did not assert a theory or position in the criminal trial. Rather, the prosecutor determined the course of the trial by deciding the offense with which Zepeda would be charged.

To the extent that Zepeda and King's testimony contradicts their prior testimony, Meridian may impeach them with their prior statements. However, they are not judicially estopped from asserting that Zepeda accidentally shot King. The jury, as the trier of fact, is competent to resolve any conflicts in the evidence.

Judgment reversed and remanded for a new trial.

SULLIVAN, J., and BAILEY, J., concur.