**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**STEVEN H. SCHUTTE**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

SAMUEL LEWIS, )
 )
 Appellant-Petitioner, )
 )
 vs. ) No. 20A03-1309-PC-348
 )
STATE OF INDIANA, )
 )
 Appellee-Respondent. )

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry Shewmaker, Judge
Cause No. 20C01-1108-PC-14

**March 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Samuel Lewis ("Lewis") appeals from the post-conviction court's order denying his petition for post-conviction relief, in which he sought to set aside his convictions for four counts of Class A felony dealing cocaine and one count of Class B felony dealing cocaine based on his claim that his trial counsel was ineffective for failing to present mitigating evidence at trial.

We affirm.

## ISSUE

Whether the post-conviction court erred by denying Lewis's petition for post-conviction relief.

## FACTS

The facts of Lewis's crimes were set forth in the opinion from Lewis's direct appeal as follows:

> The Interdiction and Covert Enforcement Unit (ICE) for Elkhart County investigates narcotics activities through controlled-buy situations and reliance upon confidential sources. Over the course of four months (January 2008 to May 2008), ICE officers arranged for two confidential sources, identified as CS07–024 and CS08–07, to participate in controlled drug buys from a man known as "Flip" (*Transcript* at 329, 344), who the confidential sources later identified from a photographic array as Lewis. Both confidential sources had personally met Lewis and knew his appearance and voice. Both sources also provided the same phone number for Lewis and used that number to contact him to arrange the controlled buys.
>
> ICE has a standard protocol for conducting controlled buys. A controlled buy begins by meeting with the confidential source in a hidden location where the source and the source's car are searched. Any contraband or money is confiscated and the source is given money that has been photocopied to make the purchase. The source is also given a

2

transmitting/recording device so that ICE officers can monitor the transaction. The source then travels to the pre-arranged location for the buy and is kept under visual and audio surveillance by ICE officers at all times. After the buy is complete, ICE officers follow the source to a given location where the source and his vehicle are again searched for contraband and money. The source also gives ICE officers a brief account of what occurred during the buy.

On January 14, 2008, undercover officers with ICE met with CS07–024 and arranged a controlled buy of cocaine from Lewis. The officers followed the standard protocol for controlled buys. CS07–024 purchased 2.78 grams of cocaine from Lewis for $140.

On April 23, 2008, CS08–07 cooperated with ICE and arranged a controlled buy of cocaine from Lewis. CS08–07 was given $400 in cash to make the purchase. After the buy, CS08–07 gave the officers a bag that was later determined to contain 13.27 grams of cocaine. On May 1, 2008, CS08–07 made a second controlled buy from Lewis in the driveway of the home on Hively Street believed to belong to Lewis. During this transaction, CS08–07 purchased 13.05 grams of cocaine from Lewis. On May 13, 2008, CS08–07 participated in a third controlled buy from Lewis during which CS08–07 purchased 13.45 grams of cocaine from Lewis. For each of these controlled buys, ICE officers followed the standard protocol set forth above.

On May 15, 2008, the ICE unit, along with the Indiana State Police SWAT team, served a search warrant on the residence located on Hively Street in Elkhart. Officers encountered Lewis outside of the residence. Lewis had in his possession a cell phone with the telephone number used by both confidential sources to arrange the controlled buys. Lewis also had over $1900 in cash in his pocket, $320 of which matched the photocopied money that was used during the May 13 controlled buy by CS08–07. After being placed under arrest and advised of his Miranda rights, Lewis told the officers that they could find cocaine in a pill bottle in the kitchen. The officers did in fact find a total of 20.57 grams of cocaine in eight knotted, plastic baggies in the pill bottle. When asked where he kept his extra baggies and scales, Lewis admitted to the officers that he used a separate home for bagging cocaine.

On May 21, 2008, the State charged Lewis with five counts of class A felony dealing in cocaine. Count I stemmed from the cocaine found during the search of Lewis's residence. Counts II through V centered on each controlled buy. On December 7, 2009, the State was granted permission to

3

amend one of the charges (Count II) from a class A felony dealing offense to a class B felony dealing offense based on the amount of cocaine being less than three grams. A three-day jury trial commenced on December 7, 2009. At the conclusion of the evidence, the jury found Lewis guilty as charged.

*Lewis v. State*, No. 20A03-1001-CR-96, slip op. at 1-2 (Ind. Ct. App. Oct. 6, 2010).

Lewis hired Rod Sniadecki ("Attorney Sniadecki") as his counsel for trial and sentencing. On December 30, 2009, the trial court held a sentencing hearing. During sentencing, Attorney Sniadecki argued that Lewis was an "unusually thoughtful" and "considerate" person who was "not otherwise predisposed to commit a criminal offense but for state intervention." (Direct Appeal Tr. 668-69). Attorney Sniadecki also argued that Lewis should receive minimum, concurrent sentences. When the trial court asked Lewis if he wanted to make a statement, Lewis testified that he had used drugs but did not sell them. The trial court found mitigating circumstances in Lewis's statement that he was a drug addict and Attorney Sniadecki's comments regarding Lewis. The trial court found the following aggravating circumstances: (1) Lewis threatened a witness; (2) Lewis's "substantial" criminal history, which included six prior controlled substance offenses, four misdemeanors, five felonies, four juvenile actions, one failure to appear, and two probation violations; and (3) prior attempts of rehabilitation had been unsuccessful. (Direct Appeal Tr. 672). The trial court sentenced Lewis to concurrent sentences of forty-eight (48) years for each Class A felony conviction and twenty (20) years for his Class B felony conviction, resulting in a total aggregate sentence of forty-eight (48) years.

Thereafter, Lewis filed a direct appeal from his convictions and sentence, arguing that: (1) the trial court erred in instructing the jury; (2) the evidence was insufficient to sustain his convictions; (3) the trial court abused its discretion by denying his motion to continue the sentencing hearing; and (4) his forty-eight-year sentence was inappropriate. Our Court affirmed Lewis's convictions and sentence.

In August 2011, Lewis filed a pro se petition for post-conviction relief, alleging that Attorney Sniadecki had rendered ineffective assistance of counsel at trial and at sentencing by failing to present mitigating evidence at sentencing. In April 2012, Lewis, represented by a State Deputy Public Defender, amended his post-conviction petition and substituted his prior post-conviction claims with the claim that Lewis's trial counsel was ineffective for failing to sever his charges. On April 5, 2012, the trial court held a post-conviction hearing.

Shortly after the post-conviction hearing, a different State Deputy Public Defender entered an appearance on behalf of Lewis. On June 11, 2012, this new Deputy Public Defender filed a motion to amend Lewis's post-conviction petition to add the claim that Lewis's trial counsel was ineffective for failing to object to the aggravation of Lewis's sentences where Lewis was convicted of multiple sales of drugs in controlled buys. The post-conviction court granted Lewis's motion.

Thereafter, on December 31, 2012, Lewis, by counsel, filed a third amended post-conviction petition, arguing, in relevant part, that his "[t]rial counsel was ineffective for failing to prepare to present mitigating evidence at Lewis's sentencing hearing." (App.

5

69).[1]  The trial court held another post-conviction hearing on April 25, 2013. During the post-conviction hearing, Lewis called Attorney Sniadecki and Lewis's cousin and aunt as witnesses. He also testified on his own behalf.

Attorney Sniadecki testified that he did not recall Lewis asking him to call witnesses for sentencing but that his normal practice was to do so if requested by his client and if it was in the client's interest. Lewis's cousin testified Lewis had lived with her for approximately one year before he was arrested and that he did not have a job at that time. She also testified that she knew that Lewis had used drugs and that she would not allow him to use drugs when he lived with her. Lewis's aunt testified that she did not know when Lewis started using drugs but that she was aware that he was arrested for the drug offenses in this case. She also testified that she would be willing to help him when he got out of prison. Lewis's cousin and aunt both testified that they were not aware of when Lewis's trial and sentencing had occurred.

At the post-conviction hearing, Lewis no longer claimed that his drug dealing was only a result of state intervention. Instead, he testified that he sold cocaine so that he could help his mother who had cancer. He also testified that he would sell drugs again to help his mother. Additionally, Lewis testified during the post-conviction hearing that Attorney Sniadecki contacted Lewis's mother and asked her to testify on Lewis's behalf at sentencing.

---

[1] Lewis's third amended post-conviction petition also alleged that his trial counsel was ineffective for failing to sever his charges and failing to object at sentencing to the aggravation of his sentences based on his convictions of multiple controlled buys. On appeal, Lewis makes no argument regarding these claims.

6

On August 9, 2013, the post-conviction court issued an order denying post-conviction relief to Lewis. The post-conviction court concluded that Lewis had failed to meet his burden of proving that he had received ineffective assistance of trial counsel. Specifically, the post-conviction court concluded:

> None of the witnesses who testified at the post[-]conviction hearing presented any evidence or any testimony that, had it been offered at the sentencing hearing, would have made a difference in the sentence. The record establishes that the court did consider [Lewis's] statement that he was a drug addict as a mitigator. Attorney Sniadecki's failure to call either of the aforementioned persons to testify at the sentencing hearing does not establish that he was ineffective[.]

(App. 92). Lewis now appeals.

## DECISION

Lewis appeals from the post-conviction court's order denying post-conviction relief on his claim of ineffective assistance of trial counsel. Our standard of review in post-conviction proceedings is well settled.

> We observe that post-conviction proceedings do not grant a petitioner a "super-appeal" but are limited to those issues available under the Indiana Post-Conviction Rules. Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). A petitioner who appeals the denial of PCR faces a rigorous standard of review, as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. If a PCR petitioner was denied relief, he or she must show that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion than that reached by the post-conviction court.

*Shepherd v. State*, 924 N.E.2d 1274, 1280 (Ind. Ct. App. 2010) (internal citations omitted), *trans. denied.*

7

A claim of ineffective assistance of trial counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant such that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)), *reh'g denied*, *cert. denied*. "Failure to satisfy either of the two prongs will cause the claim to fail." *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct. App. 2012) (citing *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002)), *trans. denied*. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *French*, 778 N.E.2d at 824.

Lewis alleges that his trial counsel was ineffective for failing to present mitigating evidence at sentencing.[2] Specifically, Lewis asserts that his trial counsel "failed to present any evidence with which he could have argued for a more lenient sentence for Lewis." (Lewis's Br. 4). He also contends that his counsel was ineffective for failing to contact or present testimony from his cousin and aunt, which he claims would have been mitigating evidence.

Lewis's claim that his trial counsel failed to present any mitigating evidence is without merit. Indeed, the record, which was admitted as an exhibit in the post-

---

[2] The State contends that Lewis has waived review of this specific ineffective assistance of counsel claim because he failed to include it in his final amended post-conviction petition. We, however, disagree. As discussed in the facts above, Lewis—in his December 2012 third amended post-conviction petition—specifically argued that his "[t]rial counsel was ineffective for failing to prepare to present mitigating evidence at Lewis's sentencing hearing." (App. 69).

conviction proceeding, reveals that Lewis's trial counsel advocated for Lewis to receive minimum and concurrent sentences. Furthermore, the trial court found mitigating circumstances in "Lewis's statement to the court that he is a drug addict and comments by Lewis's counsel that Lewis is a thoughtful and considerate person who is not predisposed to commit criminal offenses." *Lewis*, No. 20A03-1001-CR-96, slip op. at 7. Moreover, Lewis testified during the post-conviction hearing that Attorney Sniadecki contacted Lewis's mother and asked her to testify on Lewis's behalf at sentencing. "We certainly cannot and will not find [Lewis's] trial counsel ineffective for failing to do something that he did, in fact, do.'" *Perry v. State*, 904 N.E.2d 302, 309 (Ind. Ct. App. 2009) (finding trial counsel was not ineffective for failing to argue defendant's mental health as a mitigator during sentencing where trial counsel did raise the issue during sentencing), *trans. denied*.

Additionally, Lewis cannot show that his trial counsel was deficient or that he was prejudiced when his trial counsel did not call Lewis's cousin or aunt as witnesses at the sentencing hearing. Attorney Sniadecki testified that he did not recall Lewis asking him to call witnesses for sentencing but that his normal practice was to do so if requested by his client and if it was in the client's interest. Lewis presented no evidence in this post-conviction proceeding to show that his trial counsel had any knowledge of Lewis's aunt or cousin or Lewis's desire to call them as witnesses. Thus, he has failed to show that his trial counsel's performance was deficient.

Further, Lewis has failed to show he was prejudiced by his trial counsel's failure to call Lewis's aunt and cousin as witnesses at sentencing. As the post-conviction court

9

found, Lewis has failed to show that these witnesses' testimony would have made a difference in Lewis's sentence. Because Lewis has failed to show that his trial counsel's performance was deficient or that he was prejudiced, his claim of ineffective assistance of counsel fails. *See, e.g.*, *Alvarado v. State*, 686 N.E.2d 819, 822-23 (Ind. 1997) (holding that petitioner failed to show he was prejudiced by his counsel's failure to present witnesses at petitioner's sentencing hearing because petitioner failed to show how the witnesses testimony would have changed the sentencing outcome); *Johnson v. State*, 832 N.E.2d 985, 1005 (Ind. Ct. App. 2005) (holding that petitioner failed to demonstrate that he received ineffective assistance of counsel because he did not provide any evidence as to how the result of his sentencing hearing would have been different if his counsel would have argued more or different mitigating circumstances), *trans. denied*.

Lewis had the burden to establish that he was entitled to post-conviction relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). Lewis, however, failed to present evidence to support or establish his post-conviction claim. Because Lewis failed to establish his claim of ineffective assistance of trial counsel, we affirm the post-conviction court's denial of his petition for post-conviction relief.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.